**Christine Renee STARR, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 94–84.

Supreme Court of Wyoming.

Jan. 31, 1995.

Leonard D. Munker, State Public Defender; Gerald M. Gallivan, Director of the Defender Aid Program; and Brett L. Johnson, Student Director of the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Georgia L. Tibbetts, Asst. Atty. Gen., Theodore E. Lauer, Director of the Prosecution Assistance Program; and Scott A. Sargent, Student Intern for the Prosecution Assistance Program, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Christine Starr appeals from her conviction for grand larceny.

We affirm.

## Issues

Appellant sets forth her issues on appeal in the form of declaratory statements as follows:

ISSUE I: The trial court committed reversible error by admitting into the evidence a marked $50.00 bill that the police seized without a warrant, without probable cause, and without exigent circumstances in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1, § 4 of the Wyoming Constitution.

ISSUE II: Appellant was denied effective assistance of counsel under the Sixth Amendment to the United States Constitution by her counsel's failure to file a motion to suppress the marked $50.00 bill, failure to object to its use at trial, and failure to sufficiently develop a record from which Appellant could appeal the issue.

ISSUE III: The trial court erred by allowing Appellant's conviction of grand larceny to stand on the basis of insufficient evidence.

## Facts

With conflicts in the facts being resolved in favor of Appellee State of Wyoming, the record reveals that Appellant was selling framed art in Casper on the parking lot of Josh's Pub and CY Liquors. Josh's Pub, a lounge and restaurant, was located in the same building as CY Liquors, a package liquor store, was located.

At about 11:30 a.m. on June 14, 1993, Mel Harvell, the owner and operator of Josh's Pub and CY Liquors, was in his office, preparing a bank deposit of his business receipts from the prior three days, when his bar manager telephoned him, requesting that he come to see her before he went to the bank. Prior to leaving his office, Mr. Harvell bagged the receipts into three bank bags and stacked the bank bags on his desk. Mr. Harvell left his office, with the door being partially open, and encountered Appellant, who had come into the package liquor store, proceeding toward the restroom which was located in the direction of his office. A bar patron saw Appellant, who was wearing a waist pack, walk into the Pub, go to the ladies' restroom, and then leave the building through the back door. The patron did not see anyone else in the area during the few minutes that Mr. Harvell was out of his office. When Mr. Harvell returned to his office, he discovered that $1,965 in cash was missing from the top bank bag, and he had an employee call the police.

On June 11, 1993, a CY Liquors clerk had received a $50 bill with a "for deposit only" red stamp on its back with what "looked like part of a chicken" off to the left side. The clerk put the bill underneath the change drawer in the till, and the bill remained there until it was taken to Mr. Harvell's office.

Officer James Gustafson of the Casper Police Department arrived at Josh's Pub at approximately 11:41 a.m. on June 14, 1993, and he interviewed Mr. Harvell. Mr. Harvell identified Appellant as being a suspect because she had been in the area of the office at the time the theft of the money had occurred, and he described her as wearing a waist pack. The officer asked Mr. Harvell if he could identify any of the money, to which question Mr. Harvell replied: "[O]ne of the bills had a red ink marker on it." Officer Gustafson went outside to the parking lot where he contacted Appellant, asking her if she had been in Josh's Pub. Appellant replied that she had gone in through the liquor store, had used the restroom, and had left through the back door. He asked her how much cash she had on hand, and she replied that she had three to four thousand dollars. She showed him the money from each compartment of the waist pack she was wearing. Officer Gustafson informed Appellant that money had been stolen from Josh's Pub, and Appellant told him that she did not take the money. Officer Gustafson went to the police station to confer with two detectives. He informed them that $1,965 had been taken from a bank bag in Mr. Harvell's office and that a $50 bill which had a red stamp on its back was among the missing money.

Officer Gustafson and the detectives returned to Josh's Pub approximately an hour later. Detective Larry Degraw questioned Appellant, asking her how much cash she had on her person. Appellant unzipped her waist pack and showed him the money. The front compartment contained approximately $100, and the back compartment contained roughly $500. When Appellant opened her waist pack, Officer Gustafson, who was standing nearby, saw the money inside and advised Detective Degraw that the waist pack was not as it had been before because "there was a large amount of money missing out of the [waist pack]."

Detective Degraw asked Appellant to count out the money which she had in her waist pack, and she did. Detective Degraw observed a $50 bill with a red stamp on it. He advised Appellant that he "need[ed] that $50 bill with the red stamp on it, [he] believe[d] that it constitute[d] evidence of a crime." Appellant was reluctant to give the $50 bill to the detective, insisting that he give her a receipt for it. After Appellant received the receipt, she gave the bill to the detective.

Detective Degraw gave the $50 bill to Officer Gustafson, who showed it to Mr. Harvell and the sales clerk. They both identified the bill as being the one which had been received by the sales clerk and which had been in the bank bag. After Officer Gustafson told Detective Degraw that Mr. Harvell and the sales clerk had positively identified the $50 bill, Detective Degraw advised Appellant that he needed to take her to the police station for further questioning. Appellant agreed that she would go to the station as soon as her husband returned. After a few minutes, her husband returned, and Appellant accompanied the officers to the station. During the questioning at the station, Appellant admitted that she had gone into Josh's Pub to use the restroom and that she had observed the open door to, and the light turned on in, Mr. Harvell's office.

Appellant was charged with the crime of larceny of property valued at $500 or more in violation of WYO.STAT. § 6–3–402(a) and (c)(i) (1988), and she was bound over to the district court for trial. A jury found Appellant guilty of grand larceny, and the district court sentenced her to successfully complete two years of supervised probation. This appeal timely followed.

### Admission of $50 Bill into Evidence

Appellant contends that the district court erred by admitting into evidence the $50 bill which was marked with a red stamp and which the detective had seized from her without a warrant, without probable cause, and without exigent circumstances.

Appellant did not make a motion prior to trial to suppress the $50 bill, and she did not object when the district court admitted the bill into evidence. Normally, this Court would summarily hold that Appellant's failure to file a pretrial suppression motion pursuant to W.R.Cr.P. 12(b)(2) constituted a waiver as provided in W.R.Cr.P. 12(g), and this Court would, under the plain error standard, review whether the district court erred by admitting the bill into evidence. *Lobatos v. State*, 875 P.2d 716, 721 (Wyo.1994). However, because Appellant has also raised a claim of ineffective assistance of counsel on the basis that her counsel failed to attempt to prevent the admission of the $50 bill into evidence by either filing a pretrial motion to suppress or by objecting at trial, we will, as we did in *Dickeson v. State*, 843 P.2d 606 (Wyo.1992), give full consideration to this issue.

■ It is a well-settled rule that warrantless searches and seizures are per se unreasonable under both the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution. *Dickeson*, 843 P.2d at 611. However, certain recognized exceptions to the rule may justify warrantless searches and seizures. *Ortega v. State*, 669 P.2d 935, 940–41 (Wyo.1983). One of those exceptions applies to searches and seizures which are justified under the plain view doctrine. *Id.* This Court recently stated:

> When an officer lawfully occupies the vantage point from which he can observe possible evidence in plain view, there is no search, reasonable or unreasonable, proscribed by these constitutional [prohibitions]. . . .
>
> When an officer's observation of items of evidence is made within the rationale relating to plain view, he may proceed to seize the evidence if there are exigent circumstances justifying the seizure.

*McDermott v. State*, 870 P.2d 339, 343–44 (Wyo.1994). "The existence of exigent circumstances is dependent upon all of the facts or circumstances viewed in their entirety. If such facts reflect the danger of destruction of valuable evidence, exigent circumstances are present." *Patterson v. State*, 691 P.2d 253,

258 (Wyo.1984), *cert. denied*, 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985).

■ Appellant concedes that the detective was in a lawful position when he observed the $50 bill. However, she insists that she did not give the detective permission to take the $50 bill and that his seizure of the bill was not constitutionally permissible as no probable cause or exigent circumstances existed. We disagree with both contentions. The probable cause test for a plain view seizure is: "'The items observed must appear to the officer to be possible evidence.'" *Kish v. State*, 642 P.2d 453, 456 (Wyo.1982) (quoting *McCutcheon v. State*, 604 P.2d 537, 540 (Wyo.1980)). *See also McDermott*, 870 P.2d at 343–44. Even if we assume, *arguendo*, that Appellant did not give the detective consent to take the $50 bill, the record is replete with evidence to justify the detective's presence and belief that the bill would be of possible evidentiary value. The detective also had reason to believe that, if he did not seize the bill, it would likely be moved or disposed of by the time he obtained a warrant. *Commonwealth v. Smith*, 290 Pa.Super. 33, 434 A.2d 115, 120 (1981); *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799, 803 (1974).

At the time Appellant showed Detective Degraw the $50 bill which bore the red stamp, the detective had knowledge that:

- $1,965 in currency had been stolen from Mr. Harvell's office;
- the marked $50 bill had been in a bank bag on Mr. Harvell's office desk when he left the office for a short period of time;
- Appellant was in the vicinity of Mr. Harvell's office immediately after he left the office to go talk to his bar manager;
- Appellant's immediate proximity to the place where the money had been taken made her a suspect in the theft;
- the $50 bill was gone after the theft had occurred;
- Officer Gustafson had seen Appellant in possession of a large amount of money shortly after the theft had occurred;
- Appellant had been questioned about the theft and had reason to believe that

she was being suspected of taking the money;

- most of the money which Officer Gustafson had seen earlier in Appellant's waist pack was no longer there when Detective Degraw asked Appellant to count the money in her waist pack and noticed that the marked $50 bill was among the other bills being counted; and

- the $50 bill could have been easily hidden or disposed of.

Appellant's constitutional rights were not infringed upon when the detective seized the $50 bill. We are satisfied that the warrantless seizure was justified as the facts clearly reveal that the detective had probable cause to believe that the $50 bill would be of possible evidentiary value in proving that Appellant stole the money from Mr. Harvell's office. We are also satisfied that, whether or not Appellant gave her consent, exigent circumstances existed under the facts of this case to justify the warrantless seizure of the $50 bill since Appellant could have easily moved or disposed of the bill.

### Effective Assistance of Counsel

Appellant contends that she was denied the effective assistance of counsel in her defense because her counsel failed to file a motion to suppress the marked $50 bill and failed to object to its admission into evidence at the trial.

The standard which this Court has followed in determining whether a criminal defendant has been denied the effective assistance of counsel was first articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. *See also Arner v. State,* 872 P.2d 100, 104 (Wyo.1994); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986).

■ In *Gist v. State,* 737 P.2d 336, 342 (Wyo.1987), we stated: "We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." The burden is upon the defendant to overcome this presumption. *Dickeson,* 843 P.2d at 609. The failure to file a suppression motion does not per se constitute ineffective assistance of counsel. 843 P.2d at 610.

#### A.  Performance of Counsel

■ Appellant cites *Dickeson,* 843 P.2d 606, and *LDO v. State,* 858 P.2d 553 (Wyo. 1993), as cases being in point for her contention that her counsel's assistance was ineffective. In *Dickeson,* the officers took a diary from the defendant's purse and used it to contradict her testimony at the trial. The defendant's counsel neither filed a pretrial motion to suppress use of the diary nor objected to introduction of the diary at trial. This Court concluded that the defendant's counsel could have made a strong argument that an illegal search and seizure had occurred and that "the failure to file a motion and raise the issue demonstrate[d] deficient performance of trial counsel." 843 P.2d at 611. In *LDO,* the counsel failed to interview his juvenile client before they appeared at an adjudicatory hearing and, therefore, the counsel was ignorant of a very real ground for filing a pretrial motion to suppress the juvenile's confession. This Court held that the counsel's performance was ineffective because he did not fully investigate the facts which would have revealed that the police official had failed to give *Miranda* warnings. 858 P.2d at 557–59.

In this case, contrary to *Dickeson* and *LDO,* Appellant did not have a meritorious Fourth Amendment claim that the marked $50 bill was unlawfully seized. As we stated

in the previous section of this opinion, the record clearly establishes that, upon seeing the bill in plain view, Detective Degraw was justified in believing that the $50 bill would be of possible evidentiary value in determining whether Appellant committed the crime he was investigating. The record also unquestionably demonstrates that exigent circumstances warranted the bill being immediately seized without the detective first obtaining a warrant.

## B. *Prejudice to Appellant*

According to the second part of the *Strickland* test, the defendant must also show that counsel's deficient performance prejudiced the defense. 466 U.S. at 687, 104 S.Ct. at 2064. She must show the existence of " 'a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.' " *Dickeson,* 843 P.2d at 611–12 (quoting *Frias,* 722 P.2d at 147). Having tangible evidence of guilt does not trigger an obligation to attempt to have that evidence suppressed. Counsel must be aware of some basis in law and fact upon which relief can be granted. Had Appellant's counsel filed a pretrial motion to suppress the $50 bill or had he objected to its admission into evidence at trial, the district court would properly have denied the motion or objection under the facts of this case. Prejudice cannot result to an accused when her counsel fails to seek relief which is not available to her.

## Sufficiency of the Evidence

Appellant contends that the evidence was not sufficient to prove that she was the person who took the $1,965 in currency from Mr. Harvell's office.

This Court has many times stated its standard of review for a sufficiency-of-the-evidence challenge. We examine all the evidence in the light most favorable to the State to determine whether sufficient evidence supported the verdict. *Geiger v. State,* 859 P.2d 665, 669 (Wyo.1993).

We agree with Appellant that the marked bill "was the linchpin of the State's case." When this bill was admitted into evidence together with the evidence articulated in the fact section of this opinion, Appellant's conviction was a *fait accompli.*

## Conclusion

We hold that the officer lawfully seized the marked $50 bill without obtaining a warrant, that Appellant was not denied effective assistance of counsel when her counsel did not file a motion to suppress the $50 bill or object to its admission into evidence at the trial, and that sufficient evidence existed to convict Appellant of the crime of grand larceny.

Affirmed.