**Dennis John GRAINEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 98–271.

Supreme Court of Wyoming.

March 3, 2000.

Representing Appellant: Ethelyn (Lynn) Boak, Cheyenne, WY. Argument by Ms. Boak.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Cathleen E. Reed, Student Intern. Argument by Ms. Reed.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

Dennis Grainey appeals his conviction for destruction of property in violation of Wyo. Stat. Ann. § 6–3–201(a) and (b)(iii) (Lexis 1999) on the ground that he was denied effective assistance of counsel. Finding that Grainey has not met his burden of proof, we affirm his conviction.

## ISSUE

We discern the following issue for our review:

I. Whether the defendant was denied effective assistance of counsel.

## FACTS

On December 10, 1997, Dennis Grainey rented room 118 at the Wyoming Motel in Buffalo, Wyoming. Later that evening, Grainey went to the Crossroads Inn Bar in Buffalo where he ordered a beer or two and perhaps a shot. Approximately one-half hour later, he was escorted out of the bar by the manager for being loud and obnoxious and causing problems with other customers.

A short time thereafter, a guest in an adjoining room at the Wyoming Motel reported that she heard the sound of breaking glass from the room next door and asked the motel's owner to come and investigate. The owner observed glass broken from the window of room 118 and heard loud crashes from inside the room. He returned to the office and called the police.

When law enforcement officers arrived, room 118 was dark, and all was quiet. As the officers approached the room, the owner went around to the back to make sure no one was going out the back window. Upon entering the room, Grainey was found slumped down behind the door. The room and nearly everything in it had been destroyed. The officers attempted to rouse Grainey; and, when he did not respond, they picked him up and carried him outside. Four empty beer cans and a half empty bottle of whiskey were found in the room. Grainey was charged with destruction of property.

On December 11, 1997, the public defender was appointed to represent Grainey. A preliminary hearing was held on December 19, 1997, and Grainey was bound over for trial in district court. Trial was set for April 20, 1998.

At the arraignment on January 13, 1998, Grainey was asked whether he was satisfied with the representation of counsel. He said that he was. Three weeks later, Grainey wrote the first of many letters to the court complaining that the public defender's office was "just going through the motions for appearance and not adequately handling this matter" and requested that private counsel be appointed to represent him pro bono. A hearing was immediately set to address Grainey's concerns. Prior to the hearing, trial counsel filed a motion to withdraw from representation of Grainey, stating that "the attorney-client relationship has deteriorated to the point of no return."

At the hearing, the court gave Grainey a full opportunity to explain his concerns. Although two months remained before trial, Grainey complained that no investigation had been done. Grainey also complained that he was being railroaded, counsel had in mind a "flimsy" defense, counsel had not responded within ten days to a letter he had written, his civil rights were being violated by the "120" day speedy trial rule, his case may not have been filed properly, the public defender's office would now be prejudiced against him, and he would not receive a fair trial.

Grainey's counsel told the court that her investigator had been apprised of the facts of the case and would begin investigating as soon as he could, certainly by sometime in March. She expressed confidence that if someone besides Grainey was in room 118 and did the damage, that person would be found by her investigator. She also said that Grainey's complaints and lack of cooperation had impeded her ability to represent him.

After listening to Grainey and counsel, the court stated that in its view Grainey had created the conflict with counsel. The court informed Grainey that, while he had the right to representation, he did not have the right to a lawyer of his choosing. The court recommended that Grainey cooperate with counsel but also advised him of his right to represent himself. Finally, the court denied counsel's motion to withdraw but indicated substitute counsel from the public defender's office would be permitted.

Grainey continued to complain about his counsel. Thus, with a month still to go before trial, the public defender's office attempted to obtain Grainey's consent to substitute counsel. Grainey refused to consent and sent a letter to the court stating that

substituting counsel at that point would be "detrimental to his appealable issues." In a subsequent writing to the court, Grainey accused the public defender's office of attempting to "sabotage" his case by offering substitute counsel.

On April 20, 1998, Grainey's case went to trial. Two attorneys from the public defender's office appeared on his behalf. In chambers prior to jury selection, the court gave Grainey another opportunity to discuss his complaints about his attorney and go forward without the assistance of counsel. Grainey declined to comment further on his dissatisfaction with counsel and declined to proceed pro se.

Following the in-chambers proceedings, jury selection began. During her voir dire of the panel members, defense counsel addressed, among other issues, Grainey's concern about being an outsider, the prosecution's burden of proving each element of the crime charged beyond a reasonable doubt, a defendant's right to remain silent, and the jury's duty to give equal weight to the testimony of all witnesses, including that of law enforcement officials. All jurors who gave answers which might be construed as adverse to Grainey or his case were excused following peremptory challenges by defense counsel.

At trial, defense counsel cross-examined each of the State's witnesses. Consistent with Grainey's claim that someone else may have been in room 118 that night, counsel established that the owners of the motel did not see Grainey nor anyone else come or go from the room during the evening, that it would have been possible for someone to enter room 118 without being seen from the room next door or the motel office, that someone could have left room 118 through the back window without being seen before law enforcement arrived, and that no one saw Grainey wrecking the room. Also consistent with Grainey's wishes, trial counsel presented evidence through cross-examination to support an intoxication defense, despite the dubious applicability of a voluntary intoxication defense to a general intent crime.

At the close of the State's case, trial counsel moved for a judgment of acquittal on the

ground that the State failed to present a prima facie case that it was Grainey who destroyed room 118. Counsel argued that there were no eyewitnesses to what occurred in the room and that the only evidence implicating Grainey was that he was found in the room after the fact. The court denied the motion.

Trial counsel argued in her closing that there were no eyewitnesses to what occurred in room 118 and there was no one who could establish that Grainey was alone in the room prior to the officers' arrival. She argued that the circumstantial evidence presented was insufficient to support a finding beyond a reasonable doubt that Grainey destroyed the room. The jury returned a verdict of guilty; and, following a hearing on June 9, 1998, Grainey was sentenced to not less than two nor more than four years in the Wyoming State Penitentiary. This appeal followed.

### STANDARD OF REVIEW

The law of ineffective assistance is well established and was articulated in *Jackson v. State,* 902 P.2d 1292, 1295 (Wyo.1995):

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State,* 891 P.2d 793, 796 (Wyo.1995); *Starr v. State,* 888 P.2d 1262, 1266–67 (Wyo. 1995); *Arner v. State,* 872 P.2d 100, 104 (Wyo.1994); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt,* at 796; *Starr,* at 1266; *Arner,* at 104; *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias,* an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland,* 466 U.S.

at 687, 104 S.Ct. at 2064; *Starr,* at 1266; *King v. State,* 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986); *Frias,* 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of [the] case." *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

### DISCUSSION

Grainey complains that counsel failed to consult him about the objectives of representation and that counsel failed to act with reasonable diligence and promptness in investigating his case and raising available defenses. From our review of the record, we conclude that Grainey has not met his burden of proving ineffective assistance of counsel. He has presented no evidence that could overcome the presumption that counsel "rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist v. State,* 737 P.2d 336, 342 (Wyo.1987) (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066). He has failed to prove that counsel's performance was so deficient as to deprive him of his Sixth Amendment right to counsel. *Strickland, supra.*

Other than Grainey's vague, unsworn accusations in his many letters to the trial court, there is no evidence in the record before us that trial counsel failed to consult with him about her objectives, nor is there any evidence that her investigation was inadequate. Instead, the record reveals that, despite Grainey's continuous criticism of her, counsel was communicating with him sufficiently to understand and act upon his wishes. Even the motion to withdraw from representation and the efforts to obtain consent to substitute counsel (about which Grainey later complained) reflect that counsel was listening to her client and attempting to satisfy his wishes. When her motion to withdraw was denied and the efforts to provide substitute counsel failed, counsel proceeded with her representation as required.

■ Although counsel did not subpoena the more than sixteen witnesses Grainey asked to have subpoenaed, the explanation she gave in chambers prior to trial of her reasons for not doing so was satisfactory. That is, many of the witnesses were already testifying pursuant to subpoenas issued by the State and would be subject to cross-examination by the defense; the other witnesses on Grainey's list remembered him but either would not be helpful or had no information relevant to his case. Trial counsel's explanation also reveals that, by the time of trial, her office had conducted an investigation, including contacting the witnesses Grainey wanted subpoenaed.

■ That counsel, in fact, adequately investigated the case and communicated with Grainey sufficiently to understand his wishes is further demonstrated by her performance at trial. Motions were filed and argued for change of venue, speedy trial, and discovery, as Grainey requested. Although Grainey claims in his brief that the defense presented by counsel was weak and that she did not pursue other available defenses, the record does not support this claim. Instead, the record reveals that, consistent with her client's wishes, counsel presented the two main defenses available to him—that someone else was in the room and, although a questionable defense, that Grainey was too intoxicated to form the intent necessary to commit the crime charged. *See Cox v. State,* 829 P.2d 1183, 1186 (Wyo.1992). Thus, counsel established through cross-examination that no one saw Grainey or anyone else come or go from the room during the evening, that it would have been possible for someone else to enter and leave the room without being seen, and that no one saw Grainey wrecking the room.

In addition to presenting Grainey's theories of defense through cross-examination of the State's witnesses, counsel reinforced these theories in her argument to the court on her motion for acquittal and to the jury in her closing argument. She also reinforced the intoxication defense by persuading the court to give three jury instructions on voluntary intoxication.

■ Although Grainey claims in his brief that counsel's allegedly cursory and untimely investigation "caused the loss of potential witnesses, the loss of evidence that a third party might have committed the crime, and the loss of evidence that might have contradicted the amount of damage done to the motel room," he fails to point specifically to a single witness, item of evidence, or defense which was lost as a result of counsel's alleged inaction. Grainey's assertion that the late investigation made an intoxication defense difficult to support and made it more difficult for witnesses to remember him is likewise without specific factual support. As in *Cureton v. State*, 950 P.2d 544, 548 (Wyo.1997), Grainey "has not provided even a hint of exculpatory evidence that [his] trial counsel failed to learn or investigate." Absent such evidence, Grainey has failed to meet his burden of overcoming the presumption that counsel provided effective assistance.

■ We also find no merit in the claim that counsel was ineffective because she stipulated to the admissibility of photographs of the damaged room and objected to the admission of evidence that her client was released from jail earlier in the day on a driving under the influence charge. Decisions whether to stipulate or object to the admission of evidence are matters of trial strategy and are left to the discretion of counsel. In *Hopkinson v. State*, 664 P.2d 43, 78 (Wyo. 1983), this court adopted Standard 4–5.2,

ABA Standards for Criminal Justice, *The Defense Function* (Little, Brown and Company 2nd ed.1980). *See also* n.25, *Hopkinson, supra,* in which appears the comment to that standard, and *Osborn v. State,* 672 P.2d 777, 796 (Wyo.1983). Since then, the standard governing control and direction of the case has been modified. The revised standard provides:

Standard 4–5.2 Control and Direction of the Case

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel include:

(i) what pleas to enter;

(ii) whether to accept a plea agreement;

(iii) whether to waive jury trial;

(iv) whether to testify in his or her own behalf; and

(v) whether to appeal.

(b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

(c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship.[1]

1. The revised commentary for this standard provides:

*Allocation of Decision-making Power*

Certain basic decisions have come to belong to the client while others fall within the province of the lawyer. The requirement that the defendant personally enter a guilty plea and that it be voluntary and informed carries the implication that it is the defendant who must make the choice as to the plea to be entered and, concomitantly, whether to accept a proffered plea agreement. Similarly, the decisions whether to waive a jury trial or whether to take an appeal have long been considered to belong to the defendant. With respect to the decision whether the defendant should testify, the lawyer should give his or her client the benefit of his or her advice and experience, but the ultimate decision must be made by the defendant, and the defendant alone. In making each of these decisions—whether to plead guilty, whether to accept a plea agreement,

ABA Standards for Criminal Justice, *Prosecution Function and Defense Function* (3rd ed.1993).

■ Grainey's complaints all relate to tactical decisions made by defense counsel—which witnesses to call, which jurors to strike, what evidence to introduce, etc. These decisions should be made by defense counsel after appropriate client consultation. Defense counsel clearly engaged in such consultation here, so there was no violation of the standard. Grainey has failed to meet his burden of proving that counsel's decisions in this regard rendered her performance ineffective.

■ We also find nothing in the manner in which counsel conducted voir dire to support an ineffectiveness claim. Counsel succeeded in getting one member of the panel excused before jury selection even began without having to use a peremptory challenge. Thereafter, as a result of her voir dire of the remaining panel members, all of the jurors who gave answers which might be construed as adverse to Grainey or his case were excused from the jury. In fact, all of the veniremen who made comments about which Grainey complains in his brief were excused from the jury following peremptory challenges by defense counsel; none of them ultimately served on the jury that convicted him.

We also find no merit in Grainey's claim that the trial court failed to conduct a hearing to consider his complaints about counsel. This case is not like *Calene v. State*, 846 P.2d 679 (Wyo.1993) where no hearing was held at the trial court level to address the issue of ineffective assistance and the issue was developed for the first time on appeal. Here, the issue was raised repeatedly before trial, and a hearing was held specifically for the purpose of addressing Grainey's concerns. Twice during that hearing, and again before trial, Grainey was given a full opportunity to present a specific factual basis for his claim of ineffective assistance. Despite these op-

whether to waive jury trial, whether to testify, and whether to appeal—the accused should have the full and careful advice of counsel. Although it is highly improper for counsel to demand that the defendant follow what counsel perceives as the desirable course or for counsel to coerce a client's decision through misrepresentation or undue influence, counsel is free to engage in fair persuasion and to urge the client to follow the proffered professional advice. Ultimately, however, because of the fundamental nature of decisions such as these, so crucial to the accused's fate, the accused must make the decisions himself or herself.

*Strategy and Tactics*

In general, the power of decision in matters of trial strategy and tactics rests with the lawyer, after consultation with the client when such consultation is, in the lawyer's judgment, both feasible and appropriate. The lawyer should determine which witnesses should be called on behalf of the defendant. Similarly, the lawyer should decide what evidence should be introduced, whether to object to the admission of evidence, whether and how a witness should be cross-examined, and whether to stipulate to certain facts.

Many of the rights of an accused, including constitutional rights, are such that only trained experts can comprehend their full significance, and an explanation to any but the most sophisticated client would be futile. Numerous strategic and tactical decisions must be made in the course of a criminal trial, many of which are made in circumstances that do not allow extended, if any, consultation. Every experi-enced advocate can recall the disconcerting experience of trying to conduct the examination of a witness or follow opposing arguments or the judge's charge while the client "plucks at the attorney's sleeve" offering gratuitous suggestions. Some decisions, especially those involving which witnesses to call, can be anticipated sufficiently so that counsel can ordinarily consult with the client concerning them. Because these decisions require the skill, training, and experience of the advocate, the power of decision on them should rest with the lawyer. The lawyer should seek to maintain a professional relationship at all stages while maintaining the ultimate choice and responsibility for the strategic and tactical decisions in the case.

It is also important in a jury trial for defense counsel to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury.

*Record of advice*

A disagreement between counsel and the accused on a significant decision to be made before or during the trial may be the subject of postconviction proceedings questioning the effectiveness of the lawyer's performance. Rather than leave the matter to be determined on the strength of the memories of the lawyer and client, which are invariably in conflict if the issue arises, some record should be made. This may be accomplished by a memorialization of the nature of the disagreement as to such significant decision, the advice given, and the action taken.

(Footnotes omitted.)

portunities, Grainey has never provided a specific factual basis.

Instead, the record reflects that, almost from the beginning, Grainey went on the offensive, attacking trial counsel before ever really giving her a chance to perform effectively. Even when the trial court recommended to Grainey that he cooperate with counsel, and basically give her the chance to do her job, Grainey responded with yet another lengthy letter criticizing counsel. Yet, when offered the opportunity to represent himself or have substitute counsel provided, Grainey again impeded the process by refusing to consent even to substitute counsel. His stated reason—to preserve his "appealable issues"—suggests that his motive from the beginning was to create an ineffective assistance claim for purposes of appeal. Under these circumstances, and in light of the total context of counsel's performance, we find no basis for Grainey's claim of ineffectiveness.

Having concluded that Grainey has not met his burden of proving that counsel's performance was deficient, we do not reach the second prong of the *Strickland* test, the issue of prejudice.

### CONCLUSION

Viewing the claim of ineffective assistance in the total context of the representation afforded, Grainey has failed to meet his burden of overcoming the presumption of effective assistance. From the record before us, viewed in light of all the circumstances, we do not find that trial counsel's acts or omissions were outside the wide range of professionally competent assistance, or that she made errors so serious that she was not functioning as the counsel guaranteed by the Sixth Amendment and art. 1, § 10 of the Wyoming Constitution.

Affirmed.