2005 WY 81

**Wade Travis KEATS, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

No. 04–171.

Supreme Court of Wyoming.

July 20, 2005.

---

Representing Petitioner: W. Keith Goody, Alpine, Wyoming.

Representing Respondent: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; David L. Delicath, Senior Assistant Attorney General; Melissa M. Swearingen, Senior Assistant Attorney General. Argument by Ms. Swearingen.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Wade Travis Keats was convicted of first-degree arson in July of 2001. This Court affirmed that conviction on February 13, 2003. *See Keats v. State*, 2003 WY 19, 64 P.3d 104 (Wyo.2003) (*Keats I*). On November 17, 2003, Keats filed a petition for post-conviction relief alleging both his trial and appellate counsel were ineffective. The district court denied Keats' petition finding Keats failed to meet the required factual burden for showing ineffective assistance of counsel. Keats then filed a petition for writ of review, which we granted. We conclude Keats' trial counsel was ineffective; therefore, we reverse his conviction and remand to the district court for a new trial.

## ISSUES

[¶ 2] Keats presents two issues for our review:

I. Was defense counsel ineffective for failing to enter a plea of not guilty by reason of mental illness and deficiency and by failing to investigate a mental health defense? Accordingly, were the petitioner's rights under the 5th, 6th, and 14th amendments to the United State's [sic] Constitution and the applicable provisions of the Wyoming Constitution violated?

II. Was appellate counsel ineffective for not raising ineffective assistance of counsel on direct appeal? Therefore, were the petitioner's rights under the 5th, 6th and 14th amendments to the United State's [sic] Constitution and the applicable provisions of the Wyoming Constitution violated?

The State rephrases the issues as follows:

I. Whether the district court properly determined that petitioner failed to support his claim of ineffective assistance of trial counsel.

II. Whether the district court properly determined that petitioner failed to support his claim of ineffective assistance of appellate counsel.

## FACTS

[¶ 3] We summarized the facts of the original incident in *Keats I,* ¶¶ 3–6.

On the evening of December 30, 2000, appellant angrily left some friends, stating to one friend "if [you don't] want to go to jail, get out of the car...." The friend complied. Appellant then returned to his mobile home in the early morning hours of December 31, 2000, and, appearing angry and intoxicated, asked his roommate to "get [her] stuff and leave, get out of his house." After gathering some of her property, and her son, in order to leave the residence, the roommate observed appellant break a window and then saw a small fire in the hallway. She extinguished the fire, and as she left, appellant "was talking about burning the house down with himself in it and he was tired of everybody using him." The roommate reported the incident to an emergency dispatcher.

Campbell County sheriff's deputies responded to appellant's residence just after 1:00 a.m. on December 31, 2000. As they stood outside the mobile home, they observed appellant periodically inside the residence, but he did not initially respond to their requests to exit the residence or talk to them. Eventually, the officers entered the residence and located appellant in the bathroom. A lengthy period of interaction and attempted negotiation between appellant, the officers, and, at appellant's request, another individual ensued. During this period, appellant's unstable demeanor vacillated rapidly between suicidal, threatening, anger, laughter, and depression. For example, appellant frequently exited and retreated to the bathroom, told the officers to get out of his house, threatened to kill himself if they did not do so, displayed three different knives, at times held a knife to his abdomen and throat, stabbed knives into the bathroom wall, door, and floor while yelling at the officers to "come and get some of this," laughed at the officers, and stated that if the officers came through the bathroom door, a knife was positioned such that it would harm appellant.

Appellant ultimately proceeded to light several fires at different times and at different locations within the residence. The officers, and firemen, were able to extinguish and control these fires until at least one fire began to spread, filling the mobile home with smoke. At one point, appellant broke a window, but upon seeing an officer outside the window pointing a flashlight and firearm at him, appellant took two deep breaths of fresh air and returned to the smoke-filled residence. Eventually, amidst the smoke, flames and steam, the officers subdued appellant, who was proceeding through the mobile home with a knife in his hand, and placed him into custody. The mobile home was "damaged probably beyond replacement fixing."

The State charged appellant with first-degree arson and possession of a deadly weapon with unlawful intent, both felonies. A jury found appellant guilty of first-degree arson, but acquitted him of the possession of a deadly weapon charge. The district court sentenced appellant to a three- to seven-year prison term. He appeals from that judgment and sentence. Keats' direct appeal was handled by trial counsel's law office, and trial counsel's employee provided Keats' appellate representation. On appeal, Keats claimed the district court failed to properly instruct the jury on specific intent; improperly limited the evidence presented to the jury about his mental condition; and improperly refused two of his proposed jury instructions. *Keats I,* at ¶ 2. We affirmed Keats' conviction, concluding the district court did not err in refusing to give Keats' proposed jury instructions and that Keats' other arguments were not supported by cogent reasoning or pertinent authority. *Keats I,* at ¶ 36.

[¶ 4] Keats then filed a petition for post-conviction relief asserting trial counsel was ineffective and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal. At an evidentiary hearing concerning Keats' petition for post-conviction relief, the parties developed additional facts concerning Keats' mental state and trial counsel's strategies. The main focus of the hearing appears to have been trial

counsel's decision not to enter a plea of not guilty by reason of mental illness (NGMI). During the course of the hearing it was discovered Keats' mother had informed trial counsel that Keats had a history of mental health problems and an inability to stabilize his moods. Trial counsel admitted he had been told Keats had behavioral problems, mood swings, and would often get depressed. Trial counsel was also aware Keats had been on and off medication for these problems during his adult life.

[¶ 5] Following the arson incident, Keats was involuntarily placed in the mental health unit of the hospital, and the State initiated a Title 25 action against him.[1] Trial counsel met with Keats while he was in the mental health unit and was aware of the Title 25 action. The medical records from Keats' hospital stay indicate Keats had a major depressive disorder and reality distortion. Keats was also diagnosed with many symptoms compatible with bipolar disorder. Trial counsel was aware of this diagnosis. Later, the State dropped the Title 25 action on the condition that Keats be admitted to a mental health facility. Keats was admitted to such a facility, and while there he was diagnosed with a substance abuse problem and a bipolar disorder.

[¶ 6] Trial counsel testified his strategy was to argue that Keats' specific intent was not to burn down the house but rather to kill himself and, therefore, he lacked the specific intent required for arson. Before trial began, Keats and his mother both discussed the option of a NGMI plea with trial counsel. Trial counsel informed them "that it was not possible to do an insanity plea and then attempt a defense of specific intent, and he kept saying this is a specific intent case, and he said the two were not compatible." Also before trial, the district court ruled through a motion in limine that trial counsel could not introduce evidence dealing with Keats' men-

tal state because trial counsel did not enter a NGMI plea.

[¶ 7] Dr. William Logan, a psychiatrist, also testified at the hearing for post-conviction relief. He testified Keats "suffers from a bipolar disorder and that his judgment and behavioral control, his recognition of wrongfulness, was significantly compromised at the time the arson occurred." It was Dr. Logan's opinion "with a reasonable degree of medical certainty, that Mr. Keats suffered from a mental disease, Bipolar Disorder, depressed at the time of the offense." He further opined the "mental disease was of sufficient severity that the disease compromised Mr. Keats' cognitive, emotional and behavioral stability to the extent that he did not have the ability to distinguish between right and wrong with respect to his behavior, or to conform his behavior to the requirements of the law."

[¶ 8] At the hearing, appellate counsel testified she was aware Keats was admitted to the mental health unit of the hospital after the incident. She stated she understood mental illness would be relevant to whether a person could form a specific intent. She also recognized that had the NGMI plea been entered it would have been more likely the evidence regarding Keats' mental state would have been introduced. Nevertheless, she testified she never considered bringing an ineffective assistance of counsel claim.

[¶ 9] The district court denied the petition finding Keats failed to meet his required factual burden for proving his claims of ineffective assistance of counsel. The district court stated it was satisfied trial counsel's explanation for pursuing his particular strategy was sufficient to show effective assistance. The district court also found appellate counsel was not ineffective because she adequately examined the record, assessed the case, and asserted the proper issues on appeal.

---

1. When a law enforcement officer or examiner has reasonable cause to believe a person is mentally ill, that person may be detained for an evaluation. Wyo. Stat. Ann. § 25–10–109 (LexisNexis 2005). Mentally ill is defined as "a physical, emotional, mental, or behavioral disorder which causes a person to be dangerous to himself or others and which requires treatment."

Wyo. Stat. Ann. § 25–10–101(a)(ix) (LexisNexis 2005). Additionally, an application for the involuntary hospitalization of the person may be filed. If it is found that the person is mentally ill, a court has the authority to order the least restrictive and most therapeutic alternative to deal with the problem. Wyo. Stat. Ann. § 25–10–110(j) (LexisNexis 2005).

## STANDARD OF REVIEW

[¶ 10] Our standard for reviewing claims of ineffective assistance of counsel is well known.

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State,* 891 P.2d 793, 796 (Wyo.1995); *Starr v. State,* 888 P.2d 1262, 1266–67 (Wyo.1995) [overruled on other grounds, *Jones v. State,* 902 P.2d 686 (Wyo.1995) ]; *Arner v. State,* 872 P.2d 100, 104 (Wyo.1994); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt,* at 796; *Starr,* at 1266; *Arner,* at 104; *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias,* an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Starr,* at 1266; *King v. State,* 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986); *Frias,* 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of the case." *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

*Strickland v. State,* 2004 WY 91, ¶ 17, 94 P.3d 1034, ¶ 17 (Wyo.2004) (alterations in original).

## DISCUSSION

[¶ 11] The State argues that because the claims that may be presented on a petition for post-conviction relief are limited, the primary consideration in this matter is actually Keats' claim of ineffective assistance of appellate counsel as it serves as the only portal through which Keats may assert the ineffectiveness of his trial counsel. Wyoming's post-conviction statutes do indeed present limitations on the claims that may be asserted. Wyo. Stat. Ann. § 7–14–103(a) (LexisNexis 2005) states:

(a) A claim under this act is procedurally barred and no court has the jurisdiction to decide the claim if the claim:

(i) Could have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction;

(ii) Was not raised in the original or an amendment to the original petition under this act; or

(iii) Was decided on it merits or on procedural grounds in any previous proceeding which has become final.

Likewise, our case law makes it clear that post-conviction relief is not a substitute for direct appeal. *See Murray v. State,* 776 P.2d 206, 208 (Wyo.1989). Any claim that could have been raised on direct appeal, but was not raised, is procedurally barred from being raised on a petition for post-conviction relief. *Id.*

[¶ 12] However, "claims of ineffective assistance of appellate counsel are statutorily recognized as the 'portal' through which otherwise waived claims of trial-level error may be reached." *Harlow v. State,* 2005 WY 12, ¶ 6 105 P.3d 1049, ¶ 6 (Wyo. 2005) (quoting with approval the district court's summary of our jurisprudence regarding post-conviction review.) Wyo. Stat. Ann. § 7–14–103(b) (LexisNexis 2005) provides:

(b) Notwithstanding paragraph (a)(i) of this section, a court may hear a petition if:

. . . .

(ii) The court makes a finding that the petitioner was denied constitutionally effective assistance of counsel on his direct appeal. This finding may be reviewed by the supreme court together with any further action of the district court taken on the petition.

We have explained that generally a petitioner cannot raise the issue of ineffective assistance of his trial counsel for the first time in a petition for post-conviction relief because that issue could have been raised in the direct appeal and is therefore foreclosed by the doctrine of res judicata. *Smizer v. State*, 835 P.2d 334, 337 (Wyo.1992); *Murray*, 776 P.2d at 208. Despite this general "waiver" rule, it is also recognized that a claim of ineffective assistance of appellate counsel cannot be raised on direct appeal and is consequently not subject to the "waiver" rule. *Smizer*, at 337.

[¶ 13] Nevertheless, to prevent petitioners from circumventing the "waiver" rule altogether by claiming ineffective assistance of their appellate counsel, we have adopted a strict test for reviewing such a claim. *Id.* The issue of whether appellate counsel's performance was constitutionally ineffective is analyzed in much the same way that we analyze the concept of plain error. *Id.* Essentially, a petitioner must clearly show what occurred at trial, that an unequivocal rule of law was transgressed in a clear and obvious manner, and the alleged error had an adverse effect upon a substantial right. *Cutbirth v. State*, 751 P.2d 1257, 1266 (Wyo. 1988). We therefore agree with the State that, even though the claim of ineffective assistance of trial counsel is at the heart of this matter, it is only through the ineffectiveness of appellate counsel that we may consider it.

[¶ 14] The State also points out that, in addition to the strict test for reviewing claims of ineffective assistance of appellate counsel, we have established counsel is not charged with the constitutional obligation to raise every single issue identified to render effective assistance. In *Cutbirth* we noted, "generally, . . . the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." 751 P.2d at 1263. It has long been recognized that raising every conceivable issue on appeal is not always advantageous as it can lessen the impact of more specific issues that offer a better chance of success. Accordingly, the simple failure to raise an issue on appeal, even if it was meritorious, does not necessarily demonstrate ineffective assistance of counsel. *Id.* Instead, "[i]t must be demonstrated that counsel's representation was deficient by showing errors were made that were so serious that counsel was not functioning in accordance with the constitutional guarantee, and furthermore, the deficient performance prejudiced the appellant." *Id.* at 1263–64.

[¶ 15] The circumstances of the instant matter present an additional concern, however. That is, the same law office represented Keats both at trial and on appeal. Certainly, we have never indicated such a practice is prohibited or even disfavored. The ABA Standards for Criminal Justice, Providing Defense Services § 5–6.2, at 81 (3d ed.1992), states:

Counsel should be provided at every stage of the proceedings, including sentencing, appeal, certiorari and postconviction review.[2] In capital cases, counsel also should be provided in clemency proceedings. Counsel initially provided should continue to represent the defendant throughout the trial court proceedings and should preserve the defendant's right to appeal, if necessary.

The commentary related to this standard explains:

This standard is silent on the issue of whether trial counsel should be required to provide appellate representation. In support of appointing new counsel on appeal, it is argued that a fresh lawyer may perceive issues from the transcript which trial

---

**2.** Wyoming law does not go this far. *See* Wyo. Stat. Ann. §§ 7–14–104(c), 7–6–104(c)(vi) (LexisNexis 2005); *Patrick v. State*, 2005 WY 32, ¶ 17, 108 P.3d 838, ¶ 17 (Wyo.2005) (The Constitution does not require counsel for indigent defendants seeking post-conviction relief.).

counsel may miss, due to closeness and familiarity with the case. It also is suggested that new counsel on appeal is necessary in order to assure that arguments regarding ineffective assistance of counsel are presented to the appellate court. In addition, the brief-writing skills required of appellate counsel may not always be possessed by trial attorneys. On the other hand, it is said that familiarity with the case greatly facilitates preparation of the brief and oral argument. Significantly, the plans adopted by most federal courts pursuant to the Criminal Justice Act of 1964 generally provide for continuity of representation through appeal.

*Id.* at 83–84. Thus, it appears there is no general consensus on whether the same attorney (or law office) should represent a defendant both at trial and on appeal.

[¶ 16] There is, however, some indication that it is not appropriate or expected for one to raise one's own ineffectiveness.[3] *See, e.g., Nelson v. State,* 649 So.2d 1299, 1300 (Ala. Crim.App.1994); *State v. Suarez,* 137 Ariz. 368, 670 P.2d 1192, 1204 (App.1983); *People v. Fields,* 88 Ill.App.3d 821, 44 Ill.Dec. 86, 410 N.E.2d 1178 (1980); *Bottoson v. State,* 674 So.2d 621, 625 n. 5 (Fla.1996) (Kogan, J., concurring in part, dissenting in part); *Etienne v. State,* 716 N.E.2d 457, 463 (Ind.1999); *Bear v. State,* 417 N.W.2d 467, 472 (Iowa Ct.App.1987); *Hill v. State,* 749 So.2d 1143, 1149 (Miss.Ct.App.1999); *State v. Hooks,* 92 Ohio St.3d 83, 748 N.E.2d 528, 530 (2001); *Robinson v. State,* 16 S.W.3d 808, 810–11 (Tex.Crim.App.2000). We too have identified that such a practice is questionable. *Osborn v. State,* 672 P.2d 777, 795 (Wyo.1983). For this very reason, several jurisdictions recognize a difference between requests for post-conviction relief when the same attorney has represented a defendant both at trial and on appeal and when different attorneys have handled each matter. In general terms, those jurisdictions reason that if the same attorney is used both at trial and on appeal then there is not a "waiver" of a claim of

ineffective assistance of trial counsel because there has not truly been an opportunity to previously present those claims. *See, e.g., Little v. United States,* 748 A.2d 920, 923 (D.C.2000); *Jarrett v. State,* 580 N.E.2d 245, 248 (Ind.Ct.App.1991); *State v. Buckman,* 259 Neb. 924, 613 N.W.2d 463, 473 (2000); *State v. Lentz,* 70 Ohio St.3d 527, 639 N.E.2d 784 (1994); *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1177 (1999); *State v. Hensley,* 221 Wis.2d 473, 585 N.W.2d 683 (App.1998).

[¶ 17] In the circumstances of this case, we agree with this reasoning. Although appellate counsel testified that when reviewing Keats' case she never identified an ineffective assistance claim, she also testified she considered trial counsel to be her "boss." She additionally stated, "in this particular instance I did not view myself as independent separate counsel doing this.... So certainly I was largely doing it as somebody who assisted [trial counsel]." She also testified, "I am acting on [trial counsel's] behalf on doing this appeal, so I don't feel it would have been appropriate to raise ineffective [sic] of [trial counsel]." It could therefore be argued that Keats did not truly have an opportunity to make an ineffective assistance of trial counsel claim on direct appeal, and for that reason this claim is not a claim that "could have been raised but was not raised in a direct appeal." *See* § 7–14–103(a)(i). Like the courts mentioned above, we too perceive a reason to recognize a difference in this petition for post-conviction relief. As a result, in this instance, we conclude that Keats' claim is not procedurally barred from being raised for the first time on a petition for post-conviction review. Accordingly, we will simply proceed to Keats' claim of ineffective assistance of trial counsel.

[¶ 18] As noted in our standard of review, the standard we use in reviewing a claim of ineffective assistance of counsel is one of reasonableness. We interpret the right to effective assistance of counsel to

---

**3.** Although in this instance separate lawyers represented Keats, lawyers from the same private law firm are often treated as one for conflict-of-interest purposes. *Cannon v. Mullin,* 383 F.3d 1152, 1173 (10th Cir.2004). In truth, when both appellate and trial level attorneys are from the same law office, appellate counsel may feel restrained from arguing trial attorney error, which creates a conflict of interest. *Id.*

mean "not error-less counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *Jansen v. State*, 892 P.2d 1131, 1143 (Wyo.1995) (quoting *United States v. Rubin*, 433 F.2d 442, 444 (5th Cir.1970), *cert. denied*, 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228 (1971)). Thus, we must judge whether in light of all the circumstances counsel's representation was reasonable.

[¶ 19] Keats now claims counsel's representation was unreasonable, primarily because trial counsel decided not to enter a NGMI plea. Keats asserts this decision shows ineffectiveness on several levels, mainly the failure to investigate Keats' mental state and the possibility of such a plea. It is on this ground that we agree that counsel was ineffective.

[¶ 20] We have long recognized that failure of counsel to conduct a reasonable investigation may constitute ineffective assistance of counsel.

> Our first detailed analysis of counsel's duty to investigate came in *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986):
>
>> The United States Supreme Court has outlined trial counsel's duty to investigate as follows:
>>
>>> " ' * * * [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. **In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.** * * * The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. * * * [W]hat investigation decisions are reasonable depends critically on such information. * * * ' (Emphasis

added.) *Strickland v. Washington*, 104 S.Ct. at 2066."

> The reasonableness of investigation decisions depends on other evidence as well. "[I]n those cases involving claims of inadequate investigation * * * consideration [must be given to] the strength of the evidence known to counsel that suggested further inquiry was needed." 2 LaFave & Isr[ae]l, Crim.Proc. § 11.10(d) at 25 (1986 Pocket Part).

*Asch v. State*, 2003 WY 18, ¶ 40, 62 P.3d 945, ¶ 40 (Wyo.2003) (alterations in original); *see also Lopez v. State*, 2004 WY 28, ¶ 29, 86 P.3d 851, ¶ 29 (Wyo.2004). We have also recognized, however, that a failure to investigate or to prepare adequately for trial does not constitute ineffective assistance of counsel where the failure is appellant's fault. *Asch*, at ¶ 42.

[¶ 21] The State claims trial counsel made a reasonable decision to not enter a NGMI plea, which made further investigation into Keats' mental state and such a plea unnecessary. The State asserts trial counsel made this decision because Keats did not want to go to the state hospital and if a NGMI plea was entered Keats' history of substance abuse would be introduced into evidence. Essentially, the State argues the lack of investigation is Keats' fault. The record of the evidentiary hearing does show these were trial counsel's stated reasons for not pursuing a NGMI plea. However, regarding Keats' desire not to go to the state mental hospital, trial counsel limited this reason by noting "[b]ut I have to say in that regard in talking to him about it I probably gave a qualifier as to whether I thought an insanity defense was the best way. I don't want to give the impression that he just told me he did not want to go. I probably advised him that I didn't think that was the best course of conduct." Trial counsel also stated he discussed a mental illness defense with Keats but advised him such a defense was difficult to make. He also acknowledged he understood people with bipolar disorder often have substance abuse problems in an effort to deal with the symptoms of the disorder. Therefore, it seems likely Keats' substance abuse could have been explained along

with his bipolar disorder had trial counsel entered a NGMI plea. Accordingly, we cannot conclude the failure to investigate a NGMI plea was Keats' fault. *Asch,* at ¶ 42.

[¶ 22] The question then becomes whether trial counsel made a reasonable decision that made further investigation into Keats' mental state unnecessary. Instead of a NGMI plea, trial counsel's strategy was to argue Keats' specific intent was not to burn down the house but to commit suicide. More specifically, counsel's strategy was to argue that Keats was depressed at the time of the incident and started the fire in an effort to kill himself. Trial counsel sought to prove his theory by introducing general information about Keats' mental health and evidence that the State had pursued a Title 25 action against Keats following the incident. In essence, it appears trial counsel was trying to make some sort of diminished capacity argument that Keats was depressed and suicidal. Wyoming has not recognized a diminished capacity defense. We have noted the legislature has set forth the standards relating to the mental conditions that will constitute a defense to a criminal charge, and it is not our duty to increase or decrease those standards. *Price v. State,* 807 P.2d 909, 915 (Wyo.1991). This reasoning applies with equal force to a claim that mental condition prevented the accused from forming the requisite specific intent. *Id.* Indeed, the State based its motion in limine to exclude evidence related to Keats' mental health, which motion the district court granted. We therefore conclude trial counsel's strategy was a trial strategy that did not "evince a sound legal foundation." *deShazer v. State,* 2003 WY 98, ¶ 31, 74 P.3d 1240, ¶ 31 (Wyo.2003).

[¶ 23] Additionally, trial counsel testified he did not view a NGMI plea as consistent with his theory of the case, and for that reason he did not consider a NGMI plea

further.[4] This view is somewhat puzzling. Trial counsel's argument was Keats had the inability to form the specific intent for arson due to his mental instability. This theory seems entirely consistent with a NGMI plea. Under both theories Keats' mental state is the central subject of the defense. We therefore conclude trial counsel's strategy was not a reasonable decision that made further investigation unnecessary.

[¶ 24] The facts of the situation actually suggest that further investigation was essential. The record indicates Keats had a long history of mental problems, and Keats and his mother informed trial counsel of these problems. The details of the incident itself evidenced some sort of mental health issues. As we described in *Keats I,* "appellant's unstable demeanor vacillated rapidly between suicidal, threatening, anger, laughter, and depression." *Keats I,* at ¶ 4. After the incident, Keats was held in the mental health unit of the hospital on a Title 25 proceeding. Trial counsel was aware Keats had been diagnosed with bipolar disorder and the illness distorts a person's sense of reality. Trial counsel himself testified that when he was told Keats was bipolar it raised a flag in his mind that it might be a possible defense, but he didn't know enough to consider how it might all tie in. These facts considered in totality clearly would put reasonable trial counsel on notice that additional investigation was required. However, trial counsel undertook no additional investigation. Trial counsel did not obtain Keats' medical records for thorough review. He also did not consult with a mental health professional about the case nor did he obtain an opinion about Keats' mental state at the time of the offense. He likewise *did not consult with a properly qualified expert who could have helped determine if Keats' mental illness would have fit the requirements of a NGMI defense.*[5] Conse-

---

4. It should be noted W.R.Cr.P. 11(a)(1)(B) provides, "A plea of 'not guilty by reason of mental illness or deficiency' may be pleaded orally or in writing by the defendant or the defendant's counsel at the time of the defendant's arraignment or at such later time as the court may for good cause permit. Such a plea does not deprive the defendant of other defenses and may be coupled with a plea of not guilty."

5. Wyo. Stat. Ann. § 7-11-304 (LexisNexis 2005) provides, "A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law...."

quently, we must conclude that trial counsel's failure to investigate constituted ineffective assistance of counsel.

[¶ 25] Keats then must also show that prejudice resulted from trial counsel's deficient performance. In this instance we find Keats has made such a showing. Because no one contended Keats did not set the fire, the only question for his defense was his intent when doing so. Trial counsel's failure to properly investigate the matter and make a NGMI plea appears to have deprived Keats of the only true defense available to him. It also appears this defense had a reasonable likelihood of success. Indeed, at the evidentiary hearing Keats provided a psychiatrist who testified Keats did not have the ability to distinguish between right and wrong or conform his behavior to the requirements of the law. By failing to investigate and therefore failing to discover the nature of Keats' bipolar disorder, counsel deprived Keats of the only credible defense available to him, thus prejudice resulted.

## CONCLUSION

[¶ 26] Because the same law office represented Keats at both trial and on appeal we conclude Keats has not had an opportunity to make a claim of ineffective assistance of trial counsel. He is therefore not procedurally barred from making this claim on a motion for post-conviction review. Upon our review of his claim and for the reasons stated above, we conclude Keats' trial counsel was ineffective. We reverse the district court's denial of his petition for post-conviction relief and remand to the district court for a new trial.