# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 61

APRIL TERM, A.D. 2022

May 17, 2022

GILBER ALDOLFO DELGADO, JR.,

Appellant
(Defendant),

v.

S-20-0273, S-21-0208

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
The Honorable Joseph B. Bluemel, Judge

*Representing Appellant:*
David McCarthy, David McCarthy, P.C., Rawlins, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General. Argument by Ms. Mercer.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     After threatening his wife with a knife, Gilber Aldolfo Delgado, Jr., pleaded nolo contendre (no contest) to one count of felony possession of a deadly weapon with unlawful intent.  Mr. Delgado challenges the district court's denials of 1) his presentence motion to withdraw his plea under Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 32(d); and 2) his subsequent motion to withdraw his plea for ineffective assistance of counsel under Wyoming Rule of Appellate Procedure (W.R.A.P) 21.  We affirm.

## ISSUES

[¶2]     We restate and reorder Mr. Delgado's issues as:

1. Did Mr. Delgado establish defense counsel was ineffective for failing to request a court-ordered mental evaluation to determine if he was competent before he entered his no contest plea?

2. Did the district court abuse its discretion by denying Mr. Delgado's presentence motion to withdraw his no contest plea?

## FACTS

[¶3]     With Mr. Delgado's consent, the district court used information from the affidavit the State filed in support of the criminal information as a factual basis for his no contest plea.  *See Dahl v. State,* 2020 WY 59, ¶ 3, 462 P.3d 912, 913 (Wyo. 2020) (establishing the factual basis for the defendant's no contest pleas from the probable cause affidavit); *McEwan v. State,* 2013 WY 158, ¶ 15 n.4, 314 P.3d 1160, 1165 n.4 (Wyo. 2013) (with a no contest plea, the "factual basis is supplied by the prosecutor, often through reference to the affidavit supporting the information" (citing *Berry v. State,* 2004 WY 81, ¶ 39, 93 P.3d 222, 234 (Wyo. 2004))).  According to the affidavit, Uinta County Deputy Sheriff Andrew Kopp was dispatched on November 24, 2019, to a "possible fight in progress occurring in a vehicle."  As he was responding, Deputy Kopp learned the vehicle had "arrived at a residence" in Evanston, so he proceeded to that location.  He spoke with Mr. Delgado's wife who said she was driving the vehicle and Mr. Delgado was in the back seat.  Their two children and an adult female were also passengers in the vehicle.  Mrs. Delgado reported that Mr. Delgado "pull[ed] out" two knives and told her he could slit her throat and she would suffocate on her own blood.  He held one of the knives close to her neck.  Fearing he would "follow through on the threats," both she and the adult passenger called 911.  After they arrived home, Mr. Delgado hid the knives under a snowmobile and told the children not to talk to the police.

[¶4]     The State charged Mr. Delgado with one count of aggravated assault and battery for threatening to use a drawn deadly weapon on Mrs. Delgado.  *See* Wyo. Stat. Ann. § 6-2-

1

502 (a)(iii) and (b) (LexisNexis 2021). Mr. Delgado was represented by a public defender until his father retained private defense counsel. His father told defense counsel Mr. Delgado was not behaving normally, was having employment problems, and seemed depressed.

[¶5] Defense counsel met with Mr. Delgado at the jail. At that time, he was making statements she considered delusional, including that he was going to "walk on" to the Denver Broncos football team. Defense counsel advised Mr. Delgado to plead not guilty by reason of mental illness (NGMI) to the aggravated assault and battery charge and to obtain a mental evaluation to support that defense. Mr. Delgado said he had already discussed pleading NGMI with prior counsel and he did not want to pursue that option. Mr. Delgado entered a plea of not guilty at his arraignment. Defense counsel attended the arraignment but did not inform the court of her concerns about Mr. Delgado's mental health or request a court-ordered mental evaluation.

[¶6] After he was released from jail on bond, Mr. Delgado met with defense counsel at her office. He was no longer "in the same state he was [in] at the jail." Defense counsel described Mr. Delgado as "oriented to time, place. He was very coherent when he talked to [her]." Defense counsel again brought up the subject of a NGMI plea. She had spoken with Mrs. Delgado, who confirmed Mr. Delgado's father's opinion that Mr. Delgado was suffering from a mental condition. Defense counsel had also listened to the recording of the 911 call, which revealed Mrs. Delgado told the dispatcher Mr. Delgado was "acting out of his mind," was "crazy," and needed mental help. Although Mr. Delgado was "very agreeable" to many of her suggested defense strategies, he did not want to change his plea to NGMI because of "the stigma that's attached to the NGMI [plea]" and he could be indefinitely confined in the Wyoming State Hospital if he were successful in defending on that basis.

[¶7] Defense counsel negotiated a plea agreement with the State wherein Mr. Delgado would plead no contest to a reduced charge of possession of a deadly weapon with "intent to unlawfully threaten the life or physical well-being of another[.]" Wyo. Stat. Ann. § 6-8-103 (LexisNexis 2021). The amended charge was still a felony, but unlike the original aggravated assault and battery charge, it was not considered a violent felony and carried a maximum sentence of five years in prison rather than 10 years. *Compare* § 6-8-103 (possession of a deadly weapon with unlawful intent) *with* § 6-2-502(b) (aggravated assault and battery). *See also,* Wyo. Stat. Ann. § 6-1-104(a)(xii) (LexisNexis 2021) ("'Violent felony' means murder, manslaughter, kidnapping, sexual assault in the first or second degree, robbery, aggravated assault, strangulation of a household member, aircraft hijacking, arson in the first or second degree, aggravated burglary, a violation of W.S. 6-2-314(a)(i) or 6-2-315(a)(ii) or a third, or subsequent, domestic battery under W.S. 6-2-511(a) and (b)(iii))[.]"). The parties also agreed to a prison sentence of one to three years, suspended in favor of two years of supervised probation.

2

[¶8]     The district court accepted Mr. Delgado's no contest plea.  It found he knowingly and voluntarily entered the plea after conferring "with competent counsel that he [was] satisfied with" and he was "competent to enter into the plea agreement as well as to plead no contest to the amended charge."  The court deferred sentencing at the request of defense counsel.  Just two days after pleading guilty, Mr. Delgado's employer informed him he would be terminated from his employment if he was convicted of a felony.

[¶9]     In preparation for sentencing, defense counsel recommended Mr. Delgado obtain a mental evaluation.  He was evaluated by Brian Petrovich, a licensed clinical psychologist, on March 27 and April 7, 2020.  Mr. Petrovich diagnosed Mr. Delgado with moderate alcohol use disorder and moderate major depressive disorder.  After this mental evaluation but prior to obtaining Mr. Petrovich's report, Mr. Delgado was arrested for driving while under the influence of alcohol.  He entered an inpatient "dual diagnosis" (substance abuse and mental health) treatment program and was diagnosed by psychiatrist Duy Pham, M.D., with severe alcohol use disorder and bipolar I disorder, for which he was prescribed medication.

[¶10]  After being discharged from inpatient treatment, Mr. Delgado filed a motion to withdraw his no contest plea pursuant to W.R.Cr.P. 32(d).  He maintained he should be allowed to withdraw the plea because

> [he] believe[d] at the time of the incident which resulted in this charge . . . and [at the] change of plea hearing . . ., he was experiencing an episode of manic behavior and did not understand the extent of his actions, was unable to determine right from wrong[,] and was further unable to conform his conduct to the appropriate conduct.

He also indicated he wanted to withdraw his plea because a felony conviction would prevent him from continuing his current employment.  After a hearing, the district court denied Mr. Delgado's motion to withdraw his no contest plea and sentenced Mr. Delgado to the parties' agreed upon sentence.  Mr. Delgado filed a notice of appeal, which we docketed as S-20-0273.

[¶11]  Mr. Delgado then filed a motion to withdraw his plea pursuant to W.R.A.P. 21, which states:  "Following the docketing of a direct criminal appeal, the appellant may file, in the trial court, a motion claiming ineffective assistance of trial counsel.  The motion may be used to seek a new trial or to seek plea withdrawal."  Mr. Delgado claimed his trial counsel was ineffective because she did not request "he be evaluated pursuant to [Wyo. Stat. Ann. §] 7-11-303 . . . [t]o determine if he was competent to proceed prior to entering his no contest plea."  We stayed the briefing on Mr. Delgado's appeal in S-20-0273 pending the district court's decision on the Rule 21 motion.  After holding a hearing on Mr. Delgado's Rule 21 motion, the district court issued findings of fact, conclusions of law,

3

and an order denying Mr. Delgado's motion. Mr. Delgado appealed that decision as well. We docketed the case as S-21-0208, lifted the stay in S-20-0273, and consolidated the two appeals for briefing and decision.

## DISCUSSION

### A. Denial of W.R.A.P. 21 Motion - Ineffective Assistance of Counsel

[¶12] The Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution guarantee a criminal defendant effective assistance of trial counsel. To demonstrate defense counsel was ineffective, the appellant must show counsel's performance was deficient and the deficient performance prejudiced his defense. *Griggs v. State,* 2016 WY 16, ¶ 36, 367 P.3d 1108, 1124 (Wyo. 2016) (citing *Cooper v. State,* 2014 WY 36, ¶¶ 19-20, 319 P.3d 914, 920 (Wyo. 2014), and *Strickland v. Washington,* 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If the appellant fails to make the required showing of either deficient performance or prejudice, he cannot establish defense counsel was ineffective. *Weston v. State,* 2019 WY 113, ¶ 35, 451 P.3d 758, 768 (Wyo. 2019) (citing *Osborne v. State,* 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo. 2012)).

[¶13] "'Claims of ineffective assistance of counsel [under W.R.A.P. 21] involve mixed questions of law and fact . . . .'" *Weston,* ¶ 34, 451 P.3d at 768 (quoting *Hibsman v. State*, 2015 WY 122, ¶ 14, 355 P.3d 1240, 1244 (Wyo. 2015)). "The district court's 'conclusions of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct,' are reviewed *de novo*." *Sides v. State,* 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021) (quoting *Mellott v. State,* 2019 WY 23, ¶ 11, 435 P.3d 376, 381-82 (Wyo. 2019), and *Griggs,* ¶ 37, 367 P.3d at 1124 (some quotation marks omitted)). The district court's findings of fact will not be overturned on appeal unless they are clearly erroneous. *Mellott,* ¶ 11, 435 P.3d at 382 (citing *Griggs*, ¶ 37, 367 P.3d at 1124 and *Cooper*, ¶ 20, 319 P.3d at 920).

[¶14] Mr. Delgado asserts his counsel's performance was deficient because she did not adequately investigate a NGMI defense and failed to ensure he was competent to enter his no contest plea. "To prove deficient performance, the appellant must show 'counsel failed to render such assistance as would have been offered by a reasonably competent attorney.'" *Weston,* ¶ 36, 451 P.3d at 768 (quoting *Cooper,* ¶ 19, 319 P.3d at 920). We "'invoke[ ] a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. [T]he paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance.'" *Winters v. State,* 2019 WY 76, ¶ 11, 446 P.3d 191, 199 (Wyo. 2019) (quoting *Schreibvogel v. State,* 2010 WY 45, ¶ 47, 228 P.3d 874, 889 (Wyo. 2010) (other citations and quotations marks

omitted)). *See also, Neidlinger v. State,* 2021 WY 39, ¶ 53, 482 P.3d 337, 352 (Wyo. 2021).

> "'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. * * * The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. * * * [W]hat investigation decisions are reasonable depends critically on such information. * * * ' *Strickland v. Washington,* [466 U.S. at 691,] 104 S.Ct. at 2066."

*Keats v. State,* 2005 WY 81, ¶ 20, 115 P.3d 1110, 1118 (Wyo. 2005) (quoting *Asch v. State,* 2003 WY 18, ¶ 40, 62 P.3d 945, 958 (Wyo. 2003) (emphasis omitted)).

[¶15]   Wyo. Stat. Ann. § 7-11-304(a) (LexisNexis 2021) sets the standard for a NGMI defense:

> (a) A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6-1-202(b).

[¶16]   We considered a defense counsel's failure to investigate a NGMI defense in *Keats*, 2005 WY 81, 115 P.3d 1110.  Mr. Keats was charged with arson for setting fire to his home.  *Id., ¶* 3, 115 P.3d at 1113.  He had a long history of mental problems and an "inability to stabilize his moods," with diagnoses of major depressive disorder, reality distortion, substance use abuse, and bipolar disorder.  *Id., ¶¶* 4-5, 115 P.3d at 1114.  Mr. Keats and his mother expressed interest in pursuing an insanity defense, but defense counsel recommended against it and did not have Mr. Keats evaluated under § 7-11-304. *Id., ¶¶* 6, 24, 115 P.3d at 1114.  At a post-conviction hearing, a psychiatrist testified that when Mr. Keats committed the arson he was unable, due to mental illness, to "distinguish between right and wrong with respect to his behavior[] or to conform his behavior to the requirements of the law."  *Id., ¶* 7, 115 P.3d at 1114.  We concluded defense counsel's

5

performance was deficient because, although Mr. Keats was interested in pursuing a NGMI defense and there was ample evidence he was mentally ill at the time of the crime, defense counsel failed to investigate it. *Id.,* ¶ 24, 115 P.3d at 1119-20. Unlike Mr. Keats, Mr. Delgado unequivocally opposed a NGMI defense prior to entering his no contest plea.

[¶17] In *McLaren v. State,* we ruled a competent criminal defendant has a due process right to decide on his plea and defense counsel cannot usurp his choice by entering a plea of NGMI without his consent. *McLaren v. State,* 2017 WY 154, ¶¶ 47-51, 62, 407 P.3d 1200, 1212-13, 1215 (Wyo. 2017), *overruled on other grounds by Snyder v. State,* 2021 WY 108, 496 P.3d 1239 (Wyo. 2021). *See also, Pickering v. State,* 2020 WY 66, ¶ 75 n.17, 464 P.3d 236, 259 n.17 (Wyo. 2020) (a NGMI plea cannot be entered by counsel over the objection of a defendant). Thus, as long as he was competent, Mr. Delgado was entitled to choose to plead no contest and to reject defense counsel's advice to plead NGMI and undergo a mental evaluation in furtherance of the defense. *McLaren,* ¶ 51, 407 P.3d at 1213. *C.f., Follett v. State,* 2006 WY 47, ¶ 8, 132 P.3d 1155, 1158 (Wyo. 2006) ("A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he can do so competently and intelligently." (quoting *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993))) (other citations and quotation marks omitted). The question, then, is whether defense counsel provided deficient representation to Mr. Delgado by allowing him to enter his no contest plea without first seeking a court-ordered competency evaluation.

[¶18] The standard for competency to proceed in a criminal case is set out in Wyo. Stat. Ann. § 7-11-302 (LexisNexis 2021):

> (a) No person shall be tried, sentenced or punished for the commission of an offense while, as a result of mental illness or deficiency, he lacks the capacity, to:
>> (i) Comprehend his position;
>> (ii) Understand the nature and object of the proceedings against him;
>> (iii) Conduct his defense in a rational manner; and
>> (iv) Cooperate with his counsel to the end that any available defense may be interposed.

[¶19] Under Wyo. Stat. Ann. § 7-11-303(a) and (b) (LexisNexis 2021), "[i]f it appears at any stage of a criminal proceeding . . . there is reasonable cause to believe the accused has a mental illness or deficiency making him unfit to proceed," a mental health examination is required. We have interpreted § 7-11-303 as placing "great responsibility" on the prosecutor, defense counsel, and the district court to ensure a defendant is fit to proceed. *deShazer v. State,* 2003 WY 98, ¶ 26, 74 P.3d 1240, 1251 (Wyo. 2003), *overruled on other grounds by Snyder v. State,* 2021 WY 108, 496 P.3d 1239 (Wyo. 2021). *See also, Potter v. State,* 2007 WY 83, ¶ 20, 158 P.3d 656, 661-62 (Wyo. 2007) (the district court and

counsel have an obligation to raise the issue of a criminal defendant's competence to proceed when warranted). If the defendant is not fit, the proceedings are suspended pending mental health treatment to restore his competency. Sections 7-11-303(g)(i)(B)(II), (D), and (g)(ii). *See also,* W.R.Cr.P. 12(c) ("If it appears at any stage of a criminal proceeding by motion or upon the court's own motion, that there is reasonable cause to believe that the defendant has a mental illness or deficiency making the defendant unfit to proceed, all further proceedings shall be suspended and an examination ordered as required by W.S. 7-11-301, et seq."). Once the defendant regains competency, "the criminal proceeding shall be resumed." Section 7-11-303(g)(ii). *See also,* § 7-11-303(g)(i)(C) (if a defendant is deemed fit, "the court shall proceed with the trial or any other procedures as may be necessary to adjudicate the charges"). Thus, the concept of fitness or competence to proceed in court is fluid.

[¶20] Mr. Delgado compares his case to *deShazer.* There, we concluded defense counsel's performance was deficient, in part, because he failed to request the court suspend the trial and order Mr. deShazer to be evaluated for competence. *deShazer,* ¶ 31, 74 P.3d at 1252-53. Defense counsel informed the district court during the trial that Mr. deShazer was "extremely depressed" and was "unable to concentrate or do the things necessary to get ready for trial." *Id.,* ¶ 21, 74 P.3d at 1249. He expressed concern that Mr. deShazer "was not 'capable' of assisting counsel in his defense nor was he 'capable' of testifying in his own defense[.]" *Id.* A psychiatrist who evaluated Mr. deShazer for the defense during a weekend break in the trial informed the court that Mr. deShazer "lacked the mental capacity to assist in some respects with his defense[.]" *Id.,* ¶ 23, 74 P.3d at 1250. Under those circumstances, Mr. deShazer's counsel performed deficiently by not requesting a court-ordered evaluation of his competence. *Id.*, ¶ 31, 74 P.3d at 1252-53.

[¶21] Defense counsel for Mr. Delgado faced a much different situation than Mr. deShazer's counsel. Although Mr. Delgado made delusional statements while in jail, those symptoms of incompetence did not persist. The district court appropriately found:

> [Defense counsel's] concern was about her client's mental health at the time of the offense, not whether he was able to understand his circumstances and assist in his defense. By the time he was released on bond and met with [defense counsel] at her office, [Mr.] Delgado's mental condition had changed. He understood what [defense counsel] recommended and he reviewed discovery with her, including the 911 tapes. He was cooperative with any strategy that she presented in defending him except getting an evaluation and pursuing the NGMI plea.

There was no evidence that, at any point between when Mr. Delgado was released from jail and when he entered his no contest plea, defense counsel had reasonable cause to believe Mr. Delgado had a mental illness or deficiency which undermined his capacity to

comprehend his position, understand the proceedings against him, conduct his defense in a rational manner, or cooperate with defense counsel. *See* § 7-11-302(a).

[¶22] Mr. Delgado claims the fact that he refused to follow defense counsel's advice to enter a NGMI plea is evidence he lacked competence. He cites no authority for his assertion. In *Simmons v. Luebbers,* 299 F.3d 929, 934 (8th Cir. 2002), the Eighth Circuit ruled defense counsels' performance was acceptable even though they did not take additional steps to investigate Mr. Simmons' fitness after prior evaluations failed to conclusively establish his competence. *Simmons,* 229 F.3d at 933-34. Defense counsels' decision not to request additional evaluations was reasonable because Mr. Simmons had refused to cooperate with evaluators in previous attempts to have him evaluated. *Id.* Furthermore, defense counsel did not observe any signs Mr. Simmons was incompetent such as unusual behavior or difficulty communicating. *Id.* The Eighth Circuit's ruling establishes that a defendant's refusal to obtain a mental evaluation suggested by counsel is not necessarily evidence of incompetence. *See Fautenberry v. Mitchell,* 515 F.3d 614, 625 (6th Cir. 2008) ("Counsels' inability to discover or establish organic brain damage [was] directly attributable to [the defendant's] refusal to cooperate, rather than any insufficiency in the investigation"). Mr. Delgado's refusal to cooperate in pursuing a NGMI defense, without other evidence of incompetency, did not obligate defense counsel to request an evaluation.

[¶23] Because Mr. Delgado rejected a NGMI plea, defense counsel negotiated a plea agreement with the State which allowed Mr. Delgado to: 1) plead no contest to unlawful possession of a deadly weapon, which was a nonviolent felony with a lower maximum sentence than the original aggravated assault charge; and 2) receive a suspended sentence. To obtain those favorable terms from the State, defense counsel cited Mr. Delgado's family obligations, prior work history, former good standing in the community, and concerns about his mental health at the time of the incident. Thus, defense counsel made effective use of Mr. Delgado's mental condition, while representing him within the confines of his instructions.

[¶24] In sum, although defense counsel potentially could have requested Mr. Delgado be evaluated for competence to proceed when he was making delusional statements at the jail, that circumstance was short-lived. From the time he was released on bond through his no contest plea, there was no indication Mr. Delgado lacked the capacity to rationally decide whether to follow or reject defense counsel's advice to plead NGMI. Given competency is fluid, Mr. Delgado has not established defense counsel failed to perform as a reasonably competent attorney by not requesting an evaluation before he entered his no contest plea to the lesser charge. *See Weston,* ¶ 36, 451 P.3d at 768 ("To prove deficient performance, the appellant must show counsel failed to render such assistance as would have been offered by a reasonably competent attorney.") (citation and quotation marks omitted); *Winters,* ¶¶ 11-12, 446 P.3d at 199 (we consider whether trial counsel's acts or omissions were outside the wide range of professionally competent assistance) (citation and quotation

marks omitted). Because Mr. Delgado failed to demonstrate defense counsel's performance was deficient, the district court correctly denied his motion to withdraw his plea under W.R.A.P. 21.

## B. *Denial of Motion to Withdraw No Contest Plea Under W.R.Cr.P. 32(d)*

[¶25] W.R.Cr.P. 32(d) governs presentence motions to withdraw guilty or no contest pleas: "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." "'The defendant has the burden of establishing a fair and just reason'" to withdraw a plea under W.R.Cr.P. 32(d). *Wanberg v. State,* 2020 WY 75, ¶ 15, 466 P.3d 269, 273 (Wyo. 2020) (quoting *Steffey v. State*, 2019 WY 101, ¶ 30, 449 P.3d 1100, 1107-08 (Wyo. 2019)) (other citations omitted).

[¶26] In determining whether the district court erred by denying a Rule 32(d) motion to withdraw, this Court treats no contest pleas like guilty pleas. *Winsted v. State,* 2010 WY 139, ¶ 7, 241 P.3d 497, 499 (Wyo. 2010) (citing *Major v. State,* 2004 WY 4, ¶ 11, 83 P.3d 468, 472 (Wyo. 2004)). We review the district court's denial of a defendant's Rule 32(d) motion to withdraw his plea for abuse of discretion. *Wanberg,* ¶ 14, 466 P.3d at 273 (citations omitted). *See also, Steffey,* ¶ 38 n.11, 449 P.3d at 1110 n.11 ("'A defendant has no absolute right to withdraw a plea of guilty before sentence is imposed, and where the strictures of W.R.Cr.P. 11 have been met, and the defendant intelligently, knowingly, and voluntarily entered into his plea of guilty, the district court's decision to deny such a motion is within its sound discretion.'" (quoting *Frame v. State,* 2001 WY 72, ¶ 7, 29 P.3d 86, 89 (Wyo. 2001)) (emphasis and other citations omitted). The core of our inquiry is the reasonableness of the district court's decision. *Russell v. State,* 2013 WY 137, ¶ 9, 312 P.3d 76, 78 (Wyo. 2013) (citing *Jackson v. State,* 2012 WY 56, ¶ 6, 273 P.3d 1105, 1107 (Wyo. 2012)). "'A court abuses its discretion only when it could not reasonably decide as it did.'" *Wanberg,* ¶ 14, 466 P.3d at 273 (quoting *Steffey,* ¶ 18, 449 P.3d at 1105). In conducting our review, we accept the district court's findings of fact unless they are clearly erroneous. *Russell,* ¶ 9, 312 P.3d at 78 (citing *Dobbins v. State,* 2012 WY 110, ¶ 30, 298 P.3d 807, 815 (Wyo. 2012)).

[¶27] We have identified a nonexclusive list of seven factors, often referred to as the *Frame* factors, to assist courts in determining whether a defendant has established a fair and just reason to withdraw his plea. *Wanberg,* ¶ 16, 466 P.3d at 273 (citing *Frame,* ¶ 7, 29 P.3d at 89). The factors are:

> "(1) Whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether

9

the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources."

*Id.* (quoting *Frame, ¶* 7, 29 P.3d at 89) (other citations omitted). "'No single factor is dispositive, and the ultimate determination on the motion is based upon whether the defendant has carried his burden of establishing a fair and just reason for withdrawal.'" *Russell, ¶* 20, 312 P.3d at 82 (quoting *Dobbins, ¶* 53, 298 P.3d at 822, and *Major, ¶* 14, 83 P.3d at 473) (emphasis omitted).

[¶28] The district court evaluated Mr. Delgado's motion to withdraw his guilty plea using the *Frame* factors. It ruled Factors 2, 4, and 7 were irrelevant to its determination. As to the remaining factors, the district court ruled Mr. Delgado did not assert his innocence (Factor 1); he delayed in filing his motion to withdraw (Factor 3); he had the close assistance of counsel in making his plea (Factor 5); and he entered into his no contest plea knowingly and voluntarily (Factor 6). Mr. Delgado does not claim the district court abused its discretion by assigning no weight to Factors 2, 4, and 7. Instead, he argues the district court abused its discretion when it improperly evaluated the other factors and determined he did not present a fair and just reason to withdraw his no contest plea.

### *Factor 1 – Assertion of Innocence*

[¶29] The district court ruled Mr. Delgado had not asserted he was innocent of the crime because he agreed, at his change of plea hearing, that the allegations in the affidavit supporting the criminal information established a factual basis for his no contest plea. Mr. Delgado correctly points out that his admission to the underlying allegations does not control the question of whether he asserted his innocence. His argument is that, regardless of whether the allegations are true or his actions met the elements of the crime, his mental illness was a complete defense under § 7-11-304(a), which relieves a person of responsibility for his criminal conduct if, "as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Id.*

[¶30] We, therefore, consider whether Mr. Delgado properly asserted in his motion to withdraw his plea that he was not guilty by reason of mental illness. To do so, he was obligated to present nonspeculative, credible evidence of his defense. *Russell, ¶¶* 22-23, 312 P.3d at 82-83 (citing *United States v. Byrum,* 567 F.3d 1255, 1264-1265 (10th Cir. 2009) (the "mere assertion of a legal defense is insufficient; the defendant must present a credible claim of legal innocence" (other citations and quotation marks omitted), and *United States v. Ludwig,* 972 F.2d 948, 951 (8th Cir. 1992) ("a mere assertion of innocence, absent a substantial supporting record, will not be sufficient to overturn a denial of a motion to withdraw")).

10

[¶31] In *Haddock v. State,* 909 P.2d 974, 975-76 (Wyo. 1996), Mr. Haddock sought to withdraw his guilty pleas to fraudulent use of his parents' credit card and a check on the grounds he was incompetent when he entered his pleas and/or that he was not guilty by reason of mental illness. The evidence in support of his motion to withdraw included a probation agent's report that Mr. Haddock was suffering from extreme stress and psychological difficulties when the agent interviewed him for the presentence investigation. *Id.* at 976. Mr. Haddock believed law enforcement had surgically placed a device in his leg to track him and it was causing unusual magnetic occurrences. *Id.* He also said he took his parents' credit card and the check "so that he could force [them] to give him certain family information." *Id.* We ruled the evidence of Mr. Haddock's state of mind during the presentence investigation did not pertain to his competence when he entered his pleas or when he committed his crimes. *Id.* Moreover, the testimony about his unusual motives for committing the crimes did not support a mental illness or deficiency defense. *Id.* Mr. Haddock, therefore, failed to present reliable evidence of his innocence to support his motion to withdraw his pleas. *Id. See also, Wilkening v. State,* 2005 WY 127, ¶¶ 18-21, 120 P.3d 680, 685-87 (Wyo. 2005) (the district court did not err by denying the defendant's request to change his plea to NGMI based only upon his attorney's assertion the defendant was suffering from "methamphetamine psychosis" when he committed the crime).

[¶32] The evidence presented by Mr. Delgado in support of his motion to withdraw his no contest plea is similarly speculative. Mr. Delgado asserted that he "believe[d], at the time of the incident which resulted in his charge[,] . . . he was experiencing an episode of manic behavior and did not understand the extent of his actions, was unable to determine right from wrong and was further unable to conform his conduct to the appropriate conduct." Mr. Delgado's opinion, alone, merely asserts a legal defense and does not constitute a credible claim of legal innocence. Without reliable evidence, his subjective belief about his mental state was insufficient to support his motion to withdraw his plea. *See Haddock,* 909 P.2d at 976; *Wilkening,* ¶¶ 18-21, 120 P.3d at 686-87.

[¶33] The psychological reports submitted by Mr. Delgado in support of his motion to withdraw did not provide credible evidence of a NGMI defense. While they indicated he may have been suffering from a mental illness when he committed the crime, the presence of a mental illness, alone, is insufficient to release him from criminal responsibility for his actions. In accordance with § 7-11-304(a), Mr. Delgado was obligated to establish his mental illness or deficiency deprived him of the capacity to understand the wrongfulness of his conduct or to conform his conduct to the law.

[¶34] Psychologist Petrovich diagnosed Mr. Delgado with alcohol use disorder and depression. Mr. Delgado claims the Petrovich report supports a NGMI plea because it said he was, at the time of the evaluation in March and April 2020, in a "significant depressive state." The report stated his "depressive experience [was] creating a mental dullness, where he will tend to be unresponsive to others, may have some underlining (sic) distrust of [his]

11

own psychological functioning due to being overly distracted, lacking judgment at times, and reports of problems with memory." However, as in *Haddock,* the psychological report did not pertain to his mental state at the time he committed the crime. Additionally, there is nothing in the report indicating Mr. Delgado was, as a result of his mental illness, unable to appreciate the wrongfulness of his conduct or conform his actions to the law at the time of the offense. In fact, the report stated Mr. Delgado's evaluation results did "not indicate any antisocial personality disorder traits [or] any problems with overall anger reactivity or any overcontrolled hostile thoughts. It [was] more likely that he [became] significantly irritated and then [could] at times, become more impulsive in his reaction." Moreover, the report indicated that Mr. Delgado's criminal actions may have led to his mental illness rather than vice versa. It stated Mr. Delgado's "increase in depression is likely a direct result of the incident where he and his wife became argumentative and determined (sic) to a physical altercation that resulted in him . . . facing legal problems."

[¶35]  Dr. Pham, the psychiatrist who diagnosed Mr. Delgado with bipolar I disorder, also did not link Mr. Delgado's mental illness to a lack of capacity to distinguish right from wrong or an inability to control his actions at the time of the crime. Dr. Pham's evaluation stated Mr. Delgado reported past symptoms consistent with a bipolar manic state, including periods of little sleep while still feeling energetic, "overtly goal-directed behavior[,] and grandiosity including belief that he could" play professional sports. With regard to the link between his bipolar disorder and his criminal actions, however, the psychiatrist stated Mr. Delgado "has significant legal issues at this point[;] however[,] the jail time may or may not have been directly related to a manic episode." Although the report indicated he could be more impulsive during manic episodes, it did not state he lost the ability to control his behavior.

[¶36]  The mental health evaluations did not provide reliable evidence that Mr. Delgado was not guilty because of his mental illness. His conclusory statement that he believed he was in a manic episode when he threatened Mrs. Delgado with the knife did not establish he was unable to appreciate the wrongfulness of his conduct or conform his behavior to the law. Therefore, while we do not agree with the district court's rationale, we do agree that Mr. Delgado did not properly assert his innocence and Factor 1 weighs against allowing him to withdraw his plea.

### Factor 3 – Delay in Filing Motion to Withdraw Plea

[¶37]  The district court ruled the third *Frame* factor weighed slightly against allowing Mr. Delgado to withdraw his plea because he delayed in notifying the court of his "intent to withdraw [the] plea herein related to both concerns[,] employment as well as diagnosis of a mental illness." Mr. Delgado pleaded no contest to the reduced charge on February 25, 2020. He became aware of the effect a felony conviction would have on his employment just two days later, on February 27, 2020, but he waited to file his motion to withdraw his plea until June 4, 2020, which was only one week before his scheduled sentencing.

[¶38] We have concluded similar delays weighed against allowing withdrawal of pleas. In *Van Haele v. State,* 2004 WY 59, ¶ 33, 90 P.3d 708, 717 (Wyo. 2004), the district court correctly found the defendant delayed in filing a motion to withdraw his plea by waiting for two months after entering his plea and until the district court announced at his sentencing it intended to approve the parties' plea agreement. In *McCard v. State,* 2003 WY 142, ¶ 11, 78 P.3d 1040, 1043 (Wyo. 2003), we agreed with the district court that the defendant unduly delayed in filing his motion to withdraw his no contest plea by waiting until three months after he entered it and just three days before sentencing. To the extent Mr. Delgado's motion to withdraw was based upon the employment consequences of his plea, we agree with the district court that Mr. Delgado unduly delayed in filing it.

[¶39] However, Mr. Delgado's primary argument in favor of allowing him to withdraw his plea was he was not criminally responsible for his conduct because of his bipolar condition. He was diagnosed as bipolar on April 29, 2020, and was released from treatment on May 27, 2020. Defense counsel received the mental evaluation with the bipolar diagnosis at the end of May or the beginning of June. Mr. Delgado filed his motion to withdraw his plea a few days later, on June 4, 2020. Even though the district court found Mr. Delgado did not have "any idea of the issue of manic depressive or bipolar disorders until [he was] in treatment," it ruled he delayed in filing his motion to withdraw. We conclude differently. The record shows he acted promptly in meeting with his attorney and filing his motion once he was released from treatment and the mental illness evaluation became available. Because he delayed in filing a motion to withdraw his plea for employment reasons, but he did not delay in filing his motion to withdraw based upon his mental diagnosis, we conclude Factor 3 is neutral – it neither supports nor weighs against granting the motion.

### Factor 5 – Close Assistance of Counsel

[¶40] As we explained in detail above, Mr. Delgado's counsel was effective. However, under our case law, although ineffective assistance of counsel may provide a fair and just reason to withdraw a no contest plea, counsel does not have to be constitutionally ineffective to fail the *Frame* requirement of close assistance of counsel. *Compare Ortega-Araiza v. State,* 2014 WY 99, ¶ 25, 331 P.3d 1189, 1198-99 (Wyo. 2014) ("'the claim of ineffective assistance of counsel does constitute a fair and just reason to grant [a] motion to withdraw'" (quoting *Brock v. State,* 981 P.2d 465, 469-70 (Wyo. 1999)), *with Steffey,* ¶ 33, 449 P.3d at 1108-09 ("While ineffective assistance of counsel 'may constitute a fair and just reason to grant a motion to withdraw," *Frame*, ¶ 8, 29 P.3d at 89, we have never held that a defendant must satisfy the *Strickland* standard in order to establish the fifth *Frame* factor."). Instead, the close assistance of counsel factor under *Frame* requires "counsel's assistance to be adequate and available." *Steffey,* ¶ 35, 449 P.3d at 1109 (citing *Doles v. State*, 2002 WY 146, ¶ 22, 55 P.3d 29, 33 (Wyo. 2002)) (other citations omitted).

[¶41]  Mr. Delgado does not assert his attorney refused to meet with him, ignored any of his requests, or was otherwise unavailable to assist him like in *Steffey,* ¶ 36, 449 P.3d at 1109.  He also does not claim his relationship with defense counsel was contentious or lacked communication like in *Major,* ¶ 17, 83 P.3d at 474.  His argument is that defense counsel failed to adequately address his mental state.  As we explained above, the facts do not support his claim that defense counsel should have requested a court-ordered competency evaluation.  Defense counsel adequately assisted Mr. Delgado by trying to persuade him to plead NGMI.  Failing that, she negotiated a favorable plea agreement.  The district court's conclusion that Mr. Delgado did not establish he lacked the close assistance of counsel is supported by the record.  The  court properly determined that Factor 5 weighed against allowing him to withdraw his no contest plea.

### *Factor 6 – Knowing and Voluntary Plea*

[¶42]  Like a guilty plea, a no contest plea must be entered by a defendant knowingly and voluntarily.  *Steffey,* ¶ 19, 449 P.3d at 1105; *Dobbins,* ¶¶ 30, 62, 298 P.3d at 815, 824.  For a plea to be knowing, the court must properly advise the defendant and ensure he understands the "nature of the plea, the penalties, including the potential maximum sentence[] associated with the charge he would be pleading to, the rights he would be relinquishing, and the consequences if the court accept[s] the plea."  *Major,* ¶ 23, 83 P.3d at 479 (citing W.R.Cr.P. 11).  Under W.R.Cr.P. 11(d), a plea is voluntary when it is

> "'entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [is not] induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"

*Dobbins,* ¶ 62, 298 P.3d at 824 (quoting *Major,* ¶ 11, 83 P.3d at 472, and *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)) (other citations omitted).

[¶43]  The district court stated in its order denying Mr. Delgado's motion to withdraw his plea that it had reviewed the pleadings, the change of plea hearing transcript, the evidence proffered by the parties, and the arguments of counsel.  It found that, when Mr. Delgado changed his plea:  1) he was "properly advised of the charges, consequences of conviction and his rights in relation to this matter"; 2) he was "competent, cooperative, articulate and cogent in his responses to the [c]ourt and aided his counsel throughout the proceeding"; and 3) he did not demonstrate or raise any concern about "manic behavior or [an] inability to comprehend the nature and content of the proceeding."

14

[¶44] Mr. Delgado does not assert the district court failed to follow the Rule 11 procedure at his change of plea hearing, and the record confirms the court complied with the rule. The court carefully reviewed with Mr. Delgado the amended charge, the terms of the plea agreement, the court's ability to accept or reject the agreement, the rights he would waive if he pleaded no contest, and the potential consequences of his plea. Mr. Delgado repeatedly stated he understood the terms of the plea agreement and the consequences of pleading no contest. Mr. Delgado also does not claim the prosecutor or his attorney improperly induced him to enter a no contest plea. When the district court questioned him on that very issue at the change of plea hearing, he denied any such pressure.

[¶45] Mr. Delgado argues, instead, it was unreasonable for the district court to find he was competent to plead by relying on its "subjective review" of the change of plea hearing transcript. Mr. Delgado provides no authority to support his position that it was improper for the court to review the hearing transcript. In fact, the change of plea transcript often plays an important role in determining whether a defendant should be allowed to withdraw his plea. *See, e.g., Steffey,* ¶¶ 21-28, 449 P.3d at 1105-07 (reviewing the transcript of the change of plea proceedings); *Kruger v. State,* 2012 WY 2, ¶ 39, 268 P.3d 248, 256 (Wyo. 2012) (quoting the district court's recount of what took place at the change of plea hearing); *Major,* ¶ 18, 83 P.3d at 474-77 (providing a detailed description of the testimony at the change of plea hearing).

[¶46] Moreover, Mr. Delgado did not provide any evidence showing he was unable to understand or consent to the plea. Mr. Delgado specifically denied at the change of plea hearing that he suffered from "any disability, disorder, [or] ailment" which would prevent him from being able to understand and participate in the proceeding. As we explained earlier, the record shows Mr. Delgado suffered from mental illness; however, neither the mental evaluations nor any other evidence provided by Mr. Delgado indicated he was incompetent under § 7-11-302 when he entered his no contest plea. The simple fact he declined to follow his attorney's original advice to plead NGMI does not change the outcome. The totality of the circumstances shows Mr. Delgado entered his plea knowingly and voluntarily.

[¶47] Although our analysis of the *Frame* factors differs slightly from the district court's, we conclude it acted within its sound discretion by denying Mr. Delgado's Rule 32(d) motion to withdraw his plea. Given Mr. Delgado did not adequately profess his innocence, entered his no contest plea knowingly and voluntarily and with the close assistance of counsel, and the other factors do not weigh in favor of or against his motion, the district court properly concluded Mr. Delgado did not present a fair and just reason to withdraw his no contest plea.

## CONCLUSION

[¶48]   Because Mr. Delgado did not show defense counsel performed deficiently by failing to properly investigate a NGMI defense or have him evaluated for competence prior to entering his no contest plea, the district court did not err by denying his W.R.A.P. 21 motion to withdraw his plea on grounds of ineffective assistance of counsel.  The district court also correctly exercised its discretion in denying Mr. Delgado's Rule 32(d) motion to withdraw his no contest plea because he did not present a fair and just reason for withdrawal.

[¶49]   Affirmed.